UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


**Gerald J. Silva**

    **v.**

                                   **Case No. 20-cv-12-PJB-AKJ**

**William Smith, et al.**


**MEMORANDUM AND ORDER**

The federal defendants – the Honorable William E. Smith, U.S. Marshal C.J. Wyatt, and members of the U.S. Marshal's Office – have collectively moved to dismiss (Doc. No. 16) Gerald J. Silva's complaint for failing to state a claim, see Fed. R. Civ. P. 12(b)(6). Silva, who is proceeding without an attorney, alleges in his complaint (Doc. No. 1) that these defendants unlawfully conspired against him as punishment for his refusal to comply with purportedly unconstitutional conditions of supervised release. The federal defendants contend that, even when affording these allegations a liberal construction, Silva has failed to plead any plausible claim upon which relief could be granted. For the following reasons, I grant the federal defendants' motion and dismiss all of Silva's claims asserted against them. In addition, I sua sponte dismiss the claims asserted against Rhode Island Superior Court Magistrate Judge John F. McBurney III – the remaining defendant, who has not

filed a motion to dismiss or an answer – based on the State's Eleventh Amendment immunity and Judge McBurney's absolute judicial immunity from Silva's claims.

## I.   BACKGROUND

The following rehearses the relevant allegations of Silva's complaint, the documents incorporated by reference therein, and, where necessary, matters of public record, accepting as true all well-pled facts and drawing all reasonable inferences in Silva's favor.  See Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011); Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (citations omitted) (explaining that the court in reviewing a motion to dismiss may consider "documents that are part of or incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice," which includes other federal court proceedings).

## A.   Overt defiance of supervised release conditions

Silva, an inmate in the custody of the Rhode Island Department of Corrections, seeks criminal and civil remedies for purported violations of his constitutional rights.  In 2014, a federal jury convicted Silva of six counts of receipt of child pornography and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4).  See United States v. Silva, 794 F.3d 173, 177 (1st Cir. 2015).  Then-Chief

Judge Smith sentenced Silva to a 72-month term of imprisonment to be followed by fifteen years of supervised release with conditions.  See id.

On May 3, 2019, federal authorities released Silva from confinement.  The conditions of his supervised release required Silva to report to the U.S. Probation Office ("USPO") within 72 hours of release, notify the USPO of any change in residence, submit to drug testing, and comply with relevant sex offender registration provisions.  See Doc. No. 16-2, at 1 (Violation of Supervised Release R&R, United States v. Silva, No. 13-cr-043-JJM (D.R.I. July 24, 2019) (ECF No. 128)) ("R&R").  On May 7 – more than 72 hours after his release – Silva appeared at the USPO in Providence "to self-surrender . . . for refusing to comply with" what he believed to be "unconstitutional federal conditions of probation."  Compl. (Doc. No. 1, ¶ 1).  In doing so, Silva informed the officer on duty that his conduct was intentional and that he had expected a warrant to issue so that he could appear before a judge.  R&R (Doc. No. 16-2, at 4).  Nearly two hours later (at around noon), a handwritten letter by Silva was presented to the Court, stating that Silva was in "'total defiance of [his] conditions of release, including reporting to Probation, due to [his] rejection of those conditions.'"  Id. at 4 (quoting Ltr., Silva, No. 13-cr-043-JJM (ECF No. 119)).  Silva's letter also demanded a hearing.  Id.

3

At about 2:30 p.m. – about two and one-half hours after the court received Silva's letter – the USPO presented a petition to the court charging Silva with violating the conditions of his supervised released.  Compl. (Doc. No. 1, ¶ 3); R&R (Doc. No. 16-2, at 4-5).  Judge Smith reviewed the petition and, based on allegations therein regarding Silva's open defiance, issued a warrant for Silva's arrest.  Compl. (Doc. No. 1, ¶ 3).  By that time, however, Silva had already departed from the USPO.  Id.

**B.   Arrested and placed in federal custody**

The next day, May 8, the U.S. Marshals' "Dangerous Fugitives Task Force" arrested Silva at a Rhode Island motel. Compl. (Doc. No. 1, ¶ 8); R&R (Doc. No. 16-2, at 5).  Silva alleges that, during the arrest, he asked the Task Force members to bring along all of the cash in his possession — which he alleges totaled $110.57 – so that he "could have funds for necessities while incarcerated."  Compl. (Doc. No. 1, ¶¶ 9-10). He then invoked his Fifth Amendment right "not to answer any" of Supervising Marshall Wyatt's questions.  Id. ¶ 13.  "[I]n direct and immediate response" to Silva's refusal to answer, an unidentified Task Force member allegedly informed Silva that he would only be allowed to bring the legal documents he needed for his court appearance that day.  Id. ¶¶ 13-14.  Silva nevertheless remained silent.  The Task Force members then took

possession of his property.  Silva alleges that the Task Force members incorrectly stated that they took possession of only 47 cents in change.  Id. ¶¶ 16-17.

After conducting a hearing, Magistrate Judge Patricia Sullivan issued a Report and Recommendation recommending, among other things, that the court impose a sentence of four months or time served for Silva's violation of the terms of his supervised release.  R&R (Doc. No. 16-2, at 1).  On September 16, 2019, the court in Silva's criminal case conducted a final hearing, accepted the R&R, imposed a sentence of time served, and remanded Silva to Rhode Island state authorities.  See Sept. 16, 2019 Supervised Release Violation H'g Tr., Silva, No. 13-cr-043-JJM (ECF No. 144, at 24-30).

Silva contends that Judge Smith's "illegal" warrant and his role in instituting this chain of events, resulting in the alleged theft of Silva's money, makes Smith complicit in the purported violations of Silva's constitutional rights.[1]  Compl.

---

[1] In his objection, Silva alleges for the first time that Judge Smith's actions harmed his reputation and thus also meets the criteria for civil defamation.  Silva's Obj. to Mot. to Dismiss (Doc. No. 17, at 15).  Plaintiffs – including those proceeding without an attorney – cannot allege new claims in an opposition to a motion to dismiss.  See Moulton v. Bane, No. 14-CV-265-JD, 2014 WL 6671896, at *3 (D.N.H. Nov. 24, 2014); Fed. R. Civ. P. 15 (governing the amendment of pleadings).  Nevertheless, even if properly included in his complaint, Silva has not sufficiently pled a defamation claim because he has not alleged facts showing that, in issuing a warrant, Judge Smith made a

(Doc. No. 1, ¶¶ 5-6).  Silva also argues that: the Task Force's
actions were an "obvious attempt to intimidate or coerce" him
into relinquishing his Fifth Amendment right against self-
incrimination, id. ¶ 13; (2) the Task Force stole $110.10 from
among his seized property, id. ¶ 17; and (3) by participating in
the above conduct or by failing to intervene, Wyatt and other
present members of the Task Force conspired to deprive Silva of
his constitutional rights, id. ¶ 14.

C.   **Arrest warrant issued by state court**

On August 5, 2019, while incarcerated at a federal
detention center for the events above, Silva received a notice
of hearing for a pre-arraignment conference before Rhode Island
Superior Court Magistrate Judge John F. McBurney III regarding
Silva's failure to register as a sex offender.  See Compl. (Doc.
No. 1, ¶ 23); Doc. No. 1-1, at 9 (Notice of Hearing, Rhode
Island v. Silva, No. P2-2019-3668A (R.I. Super. Ct.,
Providence/Bristol Cty.)).  The following day, Silva sent a
letter from prison to Judge McBurney, advising him that Silva
"did not have any obligations to any [Rhode Island] Court," and
that "[a]ny efforts by any State Court or Agency to interject
into this situation is a violation . . . against Double

---

false statement pertaining to Silva.  See Pan Am Sys., Inc. v.
Atl. Ne. Rails & Ports, Inc., 804 F.3d 59, 64 (1st Cir. 2015).

Jeopardy."  Aug. 6, 2019 Ltr. from Silva to R.I. Super. Ct.
(Doc. No. 1-1, at 10-11) (emphasis in original).

On August 13, 2019, Judge McBurney held the scheduled pre-arraignment conference, at which Silva did not appear due to his federal incarceration.  Compl. (Doc. No. 1, ¶ 23).  Judge McBurney thus issued a warrant for Silva's arrest.  Id.  Silva contends that both the proceedings against him in state court and the warrant issued by Judge McBurney were "illegal and deliberate violation[s]" of double jeopardy.  Id.  As a result of the warrant issued, Silva was transported to the Rhode Island State Police Barracks in Lincoln, allegedly without an opportunity to retrieve his belongings, "including additional legal documents."  Id. ¶ 24.  Silva argues that this denial of access to his legal documents caused by Judge McBurney's warrant violated his constitutional rights.  Id. ¶ 25.  Additionally, he asserts that, because of his incarceration in a state-controlled facility, he could not meet with federal prosecutors to file an affidavit against the defendants, and was not able to file a written complaint with federal authorities, until November 2019.  Id. ¶¶ 26-28.

D.  **Discriminatory animus**

Silva alleges that federal authorities' "apparent" refusal to address his complaints were "due, at least in part, to the

fact that [he] is part of a 'disenfranchised' segment of society, who is viewed as having no rights in society, especially legal rights and protections against rogue government agents." Id. ¶ 30.  He does not specify in his complaint which "disenfranchised segment of society" he is a member of – whether it be convicted felons or some other cognizable group.

**E.  <u>Relief requested</u>**

To address these grievances, Silva requests the initiation of criminal and civil proceedings against all defendants.  As to Judge Smith specifically, Silva seeks civil, criminal, and disciplinary penalties for "his issuance of an illegal warrant and his role in instituting the chain of events that led to the alleged theft of plaintiff's money" and the violation of his rights." Id. at 17.  Silva seeks the same relief from Judge McBurney for his issuance of an allegedly illegal warrant that resulted in Silva's allegedly illegal incarceration and the alleged violation of multiple constitutional rights.  Id. Against Wyatt and the Task Force members ("Task Force defendants"), Silva seeks restitution, punitive damages, and civil penalties for the money that is missing.  Id.  Finally, Silva seeks orders directing all government agencies to facilitate detainees' retention of legal documents, as well as the restoration of voting rights to any citizen not convicted of

violating election laws.  Id.  These latter requests for injunctive relief are improper, as the court can only issue injunctions against parties to a litigation (and their agents), see Fed. R. Civ. P. 65, and none of the named defendants have the authority to perform the acts required by Silva's demands. I therefore construe Silva's complaint as seeking only monetary relief.

## II.  STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must include factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Under this standard, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556).  Plausibility demands "more than a sheer possibility that [the] defendant has acted unlawfully," or "facts that are merely consistent with [the] defendant's liability." Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted).  Although the complaint need not set forth detailed factual allegations, it must provide "more than

an unadorned, the-defendant-unlawfully-harmed-me accusation."
Id. (quoting Twombly, 550 U.S. at 555).

In evaluating the pleadings, I excise any conclusory statements from the complaint and credit as true all non-conclusory factual allegations and reasonable inferences drawn from those allegations.  Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  I "may also consider 'facts subject to judicial notice, implications from documents incorporated into the complaint, and concessions in the complainant's response to the motion to dismiss.'"  Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019) (quoting Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 13 n.2 (1st Cir. 2005)).  I must, additionally, construe a pro se party's pleadings liberally.  See Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 75–76 (1st Cir. 2014) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam)).  The same standard applies to the extent this court is screening plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, in light of his status as an inmate proceeding in forma pauperis at the time he filed this action.

### III. <u>ANALYSIS</u>

The federal defendants contend that Silva's claims against them must be dismissed because he has failed to plead a

cognizable legal claim.  Liberally construed, Silva's complaint
attempts to allege the following civil claims against these
defendants: (1) conspiracy to interfere with civil rights, 42
U.S.C. § 1985; (2) an action for neglect to prevent conspiracy,
id. § 1986; (3) compelled self-incrimination, in violation of
the Fifth Amendment; (4) deprivation of property without due
process, in violation of the Fourth and Fifth Amendments; and
(5) cruel and unusual punishment, in violation of the Eighth
Amendment.  Additionally, Silva cites several federal criminal
statutes, see, e.g., 18 U.S.C. §§ 241 & 242, which as discussed
below cannot serve as the basis for civil claims filed in
federal district court.  I assess the sufficiency of each
statutory and constitutional claim identified above in turn
after addressing three preliminary issue: claims based on
criminal statutes, sovereign immunity, and judicial immunity.

A.    **Claims based on criminal statutes**

Silva seeks to have his complaint "filed as both a civil
and criminal" action since federal law enforcement agencies have
not, in his view, fulfilled "their mandated legal obligations to
investigate and prosecute the alleged charges lodged against the
defendants" in his complaint, including violations of 18 U.S.C.
§§ 241 and 242.  Compl. (Doc. No. 1, at 17) (emphasis in
original).  A private citizen, however, may not initiate a

federal criminal prosecution.  See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).  Additionally, "[o]nly the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242 (the criminal analogue of 42 U.S.C. § 1983)."  Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (citations omitted) (also noting that neither § 241 nor § 242 gives rise to a civil action for damages).  As such, I dismiss with prejudice all claims seeking criminal liability against the defendants and assess whether Silva has sufficiently pled cognizable civil claims upon which relief can be granted.

**B.   Sovereign immunity**

In his complaint, Silva does not delineate whether he is asserting claims of federal constitutional violations against the defendants in their official or individual capacities.  To the extent Silva asserts claims for monetary damages against the federal defendants in their official capacities, I dismiss those claims on the grounds that the federal defendants are protected by sovereign immunity.  F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994); Casey v. Dep't of Health & Hum. Servs., 807 F.3d 395, 402 (1st Cir. 2015) (citing Tapia-Tapia v. Potter, 322 F.3d 742, 746 (1st Cir. 2003), and Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)); Guillemard-Ginorio v. Contreras Gomez, 161 F. App'x 24, 27 (1st Cir. 2005).

The Eleventh Amendment similarly precludes suits for damages against state employees sued in their official capacities.  See Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014).  This court may raise Eleventh Amendment issues sua sponte pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  See Loggins v. Pilshaw, No. 20-3007, 838 Fed. Appx. 323, 2020 WL 7040527, at *2-3, 2020 U.S. App. LEXIS 37486, at *6 (10th Cir. Dec. 1, 2020) (dismissing claims under section 1915A, prior to defendants' appearance, as barred by Eleventh Amendment, judicial, prosecutorial, or quasi-judicial immunity); Dicenzo v. Mass. Prob. & Family Ct., No. 15-cv-30171-MAP, 2015 WL 9690895, at *3-4, 2015 U.S. Dist. LEXIS 174448, at *8-9 (D. Mass. Nov. 19, 2015), R&R adopted, 2016 WL 128127, 2016 U.S. Dist. LEXIS 3653 (D. Mass. Jan. 12, 2016).  As the Eleventh Amendment bars claims for money damages asserted against Judge McBurney in his official capacity, I dismiss those claims against Judge McBurney.

C.   **Judicial Immunity**

The federal defendants argue that the court must dismiss all claims against Judge Smith because he is absolutely immune from civil suit.  "[I]t is an axiom of black letter law that when a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions."  Zenon v.

Guzman, 924 F.3d 611, 616 (1st Cir. 2019).  "This immunity applies no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." Cok, 876 F.2d at 2 (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).  "Only judicial actions taken in the clear absence of all jurisdiction will deprive a judge of absolute immunity." Id.; see also Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (per curiam) (internal citation omitted) ("[I]mmunity is overcome only in cases where a judge is carrying out a nonjudicial action, or in instances where a judge takes an action, though seemingly 'judicial in nature,' that is 'in the complete absence of all jurisdiction.'").

Here, Silva has not pled either the absence of jurisdiction or that Judge Smith's conduct was not judicial in nature.  To the contrary, Silva concedes he appeared at the USPO expecting that the court would issue an arrest warrant for his open defiance of his supervised release conditions. Compl. (Doc. No. 1, ¶¶ 1-2).  Instead, Silva contends that Judge Smith abused his judicial authority because he "vindictive[ly]" issued an arrest warrant after Silva left the USPO. Id. ¶ 3.  Such an argument, even if it were sufficient to state a claim for relief, does not overcome a judge's absolute immunity. Accordingly, I find that Judge Smith is immune from Silva's suit.  By the same token, I find sua sponte under 28 U.S.C.

§§ 1915(e)(2) and 1915A, that Judge McBurney is similarly immune from Silva's claims for damages, given the nature of Silva's claims and allegations challenging actions that were taken in Judge McBurney's judicial capacity in matters over which he had jurisdiction.

D.   **Conspiracy claims**

Silva generally contends that Wyatt and the other federal Task Force members conspired to violate his civil rights, in violation of 42 U.S.C. §§ 1985 and 1986.  The federal defendants argue that such conspiracy claims should be dismissed for two reasons.  First, they assert that employees of the same federal agency cannot legally conspire with each other in the course of their official duties.  But see Bossé v. N.Y. Life Ins. Co., No. 19-cv-016-SM, 2019 WL 5967204, at *8, 2019 U.S. Dist. LEXIS 196555, at *20-21 (D.N.H. Nov. 13, 2019) (preliminarily rejecting, as inconsistent with First Circuit precedent, the argument that federal agents could not legally conspire for purposes of a § 1985 claim).  Additionally, they argue that Silva has failed to plead facts sufficient to sustain a civil rights conspiracy claim under 42 U.S.C. §§ 1985 and 1986. I agree with their latter contention and thus dismiss these claims.

Section 1985 has three components, each of which sets forth a distinct cause of action.  Though Silva does not specify the subsection under which his claims arise, the first two are plainly inapplicable to his case.  Subsection (1) "protects federal officers from those conspiring to prevent (by force, intimidation, or threat) the officer from discharging his or her duties," and subsection (2) "protects parties and witnesses in federal court from conspiracies to deter them from appearing or testifying."  Donahue v. City of Bos., 304 F.3d 110, 122 n.9 (1st Cir. 2002); see also 42 U.S.C. § 1985.  Silva – an incarcerated person – falls into neither of these categories.

Subsection (3), by comparison, "is broader in its reach and prohibits, in general terms, conspiracies to violate civil rights."  Donahue, 304 F.3d at 122 n.9.  To state a claim, a plaintiff must plead facts showing, among other things, that "some class-based animus (usually racial) lay behind the conspirators' action, and that the conspiracy was aimed at interfering with protected rights."  Id. (citing Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267–68 (1993)).  "Though there is no comprehensive set of rules for determining when individuals constitute a class for purposes of § 1985(3), there are certain inescapable minimum requirements."  Aulson v. Blanchard, 83 F.3d 1, 5 (1st Cir. 1996).  For example, for purposes of § 1985(3), a class must be "comprised of a

distinctive and identifiable group," such that "a reasonable
person c[ould] readily determine by means of an objective
criterion or set of criteria who is a member of the group and
who is not." Aulson, 83 F.3d at 5–6.  Moreover, the class-based
animus alleged must be "invidiously discriminatory." Griffin v.
Breckenridge, 403 U.S. 88, 102 (1971).

Here, Silva's conclusory allegation that he is part of some
"disenfranchised segment of society" falls short of satisfying
his burden of pleading that he is a member of a protected class
or that the defendants' conduct was motivated by "invidiously
discriminatory animus." Id.  Liberally construed, Silva appears
to contend that the defendants conspired against him because he
is a convicted sex offender or because he is "political
dissident." See Silva's Obj. to Mot. to Dismiss (Doc. No. 17,
2–3, 20–21).[2]  Neither construction, however, saves his claim.

With respect to the former, many courts, including the
First Circuit Court of Appeals, have held that neither convicted

---

[2] In his opposition, Silva clarifies: "The Defense refers to
Plaintiff's disenfranchisement.  It is a well-known fact that
Prisoners have been ostracized from society and that Political
Dissidents, including Plaintiff, who speak up against corrupt
government officials, are persecuted under distortions of legal
statutes." Id.  Silva's self-identification as a political
dissident appears to stem from his belief that an "organized
crime syndicate in the R.I. State Government . . . orchestrated
fictitious [sex crime] charges against [him]" in response to his
attempt to file a complaint against the "immoral conduct of R.I.
state government employees." See Compl. (Doc. No. 1, at 12).

felons nor subsets thereof constitute a protected class under § 1985(3).  See, e.g., Pratt v. New Hampshire, 23 F.3d 394, 1994 WL 170799, at *1 (1st Cir. 1994) (unreported table case); Farese v. Scherer, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003) (affirming dismissal of a prisoner's § 1985(3) claim "because prisoners are neither a class offered special protection under the equal protection clause nor a class that Congress intended to protect when it enacted § 1985(3)").  As to the latter, Silva has failed to allege facts that show Wyatt or any of the other Task Force members – all federal agents – knew of, and thus aimed to interfere with, Silva's alleged political dissident activities – that is, his attempt to file a complaint against state government employees in September 2011.  See Compl. (Doc. No. 1, at 12).  Thus, even if I were to assume that "political dissidents" like Silva can constitute a class for purposes of § 1985 – but see Aulson, 83 F.3d at 6 (finding that "persons 'opposed to the politics of the old guard' [were] not a cognizable group" as there was "no way to characterize this group . . . by reference to any objective criteria") – I would still find that Silva has not pled sufficient facts to state a § 1985(3) claim upon which relief can be granted.

Silva's § 1985 claims are dismissed with prejudice for these reasons.  Additionally, because Silva has not sufficiently pled a claim under § 1985, I must also dismiss his claims

brought under § 1986.  See 42 U.S.C. § 1986 (requiring violation

of § 1985 to plead a claim); Maymi v. Puerto Rico Ports Auth.,

515 F.3d 20, 31 (1st Cir. 2008) ("[A]bsent a showing of

conspiracy, [a plaintiff] has no claim under § 1986, which

extends liability to those who knowingly failed to prevent

conspiracies under § 1985.").

## E.   *Bivens* Claims

In addition to his conspiracy claims, Silva alleges that he

is entitled to monetary damages from each of the federal

defendants for purported violations of his constitutional rights

during the execution of his arrest.  Liberally construed, these

allegations purport to assert claims under Bivens v. Six Unknown

Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388

(1971) (recognizing for the first time an implied private right

of action for damages against federal officers alleged to have

violated a person's constitutional rights).[3]

"The scope of constitutional violations redressable by

means of a Bivens action is, however, quite limited."  Casey,

807 F.3d at 400-01.  As explained by the Court of Appeals:

"Bivens itself recognized a right to relief against federal

---

[3] "A 'Bivens' action is a civil suit brought against agents of
the United States, and is viewed as the federal analog to § 1983
suits against state officials."  Casey, 807 F.3d at 398 n.1
(internal citation omitted).

officers alleged to have undertaken a warrantless search and seizure in violation of the Fourth Amendment.  In the [five] decades since, the Supreme Court has extended the Bivens holding beyond its original Fourth Amendment confines only twice" — first to a claim of gender discrimination in violation of the Fifth Amendment's Due Process Clause, and second, to inadequate medical treatment provided in a prison environment, in violation of the Eighth Amendment.  Id. (citing Davis v. Passman, 442 U.S. 228 (1979), and Carlson v. Green, 446 U.S. 14 (1980)).  The Supreme Court has remained hesitant to extend Bivens to new contexts, "at least in part, from its recognition that Congress is generally better-positioned to craft appropriate remedial schemes to address constitutional violations committed by federal officers."  Casey, 807 F.3d at 401 (citing Bush v. Lucas, 462 U.S. 367, 373 (1983)).

    1.   Compelled self-incrimination

For his Bivens claims, Silva first asserts that he is entitled to monetary damages because Task Force members, in arresting him, refused to let him bring certain property either in an attempt to coerce him to repudiate his Fifth Amendment right to remain silent or in retaliation for his invocation of that right.  The federal defendants argue that these allegations

cannot sustain a Bivens claims.  The defendants are correct that Silva has failed to state a claim.

As an initial matter, Silva's Fifth Amendment claim does not fit into an existing Bivens cause of action recognized by the Supreme Court.  To the contrary, district and appellate "[c]ourts that have addressed this issue have declined to extend Bivens to permit a cause of action for violation of the Self-Incrimination Clause of the Fifth Amendment." Williams v. O'Donnell, No. 3:19-CV-00418-BR, 2020 WL 6686416, at *8, 2020 U.S. Dist. LEXIS 211593, at *21 (D. Or. Nov. 12, 2020) (citing, as examples, Chavez v. Wynar, 421 F. Supp. 3d 891, 910 (N.D. Cal. 2019), and Brownlee v. Hunt, No. 3:20-CV-001, 2020 WL 1897178, at *5, 2020 U.S. Dist. LEXIS 43881, at *14 (M.D. Pa. Mar. 12, 2020)).

Nevertheless, even if a cause of action did lie in Bivens, Silva has not pled an actual violation of his Fifth Amendment right against self-incrimination.  While the Fifth Amendment secures the right not to be a witness against oneself in a criminal case, and protects individuals from the threat of substantial economic sanction for exercising that right, see Lefkowitz v. Turley, 414 U.S. 70, 82-83 (1973), "mere coercion does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case against the witness." Chavez v. Martinez, 538 U.S. 760, 769

(2003).  Silva has not pled that he was coerced into offering self-incriminating statements or that any of his statements were used against him at any stage of criminal process.  To the contrary, his complaint and objection intimate that he remained silent in the face of the Task Force members' allegedly "obvious attempt to intimidate or coerce [him] into relinquishing" his Fifth Amendment rights.  See Compl. (Doc. No. 1, ¶ 13) (emphasis added); Silva's Obj. to Mot. to Dismiss (Doc. No. 17, at 11-12) (noting officers "attempted" to intimidate him into forfeiting his rights).

Because Silva did not submit to the Task Force defendants' allegedly coercive tactics, he is unable to plead any violation whatsoever of his right against self-incrimination.[4]  Cf. Mahan v. Plymouth Cty. House of Corr., 64 F.3d 14, 17 (1st Cir. 1995) (rejecting defendant's claim that detective violated Fifth Amendment by threatening to place him in holding cell if he refused to waive his right to an attorney because it was undisputed that defendant made no statements in response to interrogation).  Accordingly, I need not consider whether Bivens affords a remedy in the Fifth Amendment context, and instead

---

[4] I reach the same result under a substantive due process theory, as multiple Supreme Court decisions have rejected to extend Bivens to encompass due process violations.  See, e.g., Schweiker v. Chilicky, 487 U.S. 412, 414 (1988); Wilkie v. Robbins, 551 U.S. 537, 547-48, 562 (2007).

dismiss with prejudice Silva's Fifth Amendment self-incrimination claim for failing to state a claim.

    2.  <u>Seizure of money and other personal property</u>

    Silva next asserts that the Task Force defendants are liable for depriving him of his property – including legal documents and his on-hand cash – on the day of his arrest. According to the complaint, Silva asked the Task Force members if he could bring his cash – allegedly totaling $110.57 at the time – to pay for necessities while incarcerated.  The arresting Task Force members allowed Silva to bring only the legal documents he needed for that day's court appearance.  The Task Force members, however, accounted for only 47 cents in his possession at the time of his arrest, resulting in the alleged disappearance of $110.10 of Silva's cash.  Silva contends that, in depriving him of his property, the Task Force members violated his Fourth Amendment and procedural due process rights.

    The federal defendants contend that, to the extent Silva has sufficiently pled he was unlawfully deprived of property (a contention the defendants deny), Silva cannot sustain a <u>Bivens</u> claim because Congress has provided Silva with meaningful post-deprivation remedies for his purported loss.  See <u>Casey</u>, 807 F.3d at 401 (explaining that courts, in deciding whether to recognize a <u>Bivens</u> remedy, must first assess "'whether any alternative, existing process for protecting the interest

23

amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages'" (quoting Robbins, 551 U.S. at 550)).  In particular, the federal defendants argue that two statutes – 31 U.S.C. §§ 3723 and 3724 – each provide Silva with an administrative procedure for settling small monetary claims arising out of federal employees' negligence or misconduct – like Silva alleges occurred here.[5]

As the defendants correctly note, numerous courts have found that the availability of such post-deprivation remedies under 31 U.S.C. §§ 3723 and 3724 preclude Bivens claims for property damage.  See, e.g., Omran v. Bleezarde, No. 1:15-CV-190-DBH, 2016 WL 5401018, at *6, 2016 U.S. Dist. LEXIS 132729, at *18 (D.N.H. Aug. 26, 2016), R&R adopted, 2016 WL 5394692, 2016 U.S. Dist. LEXIS 132293 (D.N.H. Sept. 27, 2016); D'Amario v. United States, 56 F. Supp. 3d 249, 255 (W.D.N.Y. 2014)

---

[5] Under § 3723, "[t]he head of an agency . . . may settle a claim for not more than $1,000 for damage to, or loss of, privately owned property that is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment" if that claim is "presented to the head of an agency within one year after it accrues."  Section 3724 similar empowers the U.S. Attorney General to "settle, for not more than $50,000 in any one case, a claim for personal injury, death, or damage to, or loss of, privately owned property, caused by an investigative or law enforcement officer . . . who is employed by the Department of Justice acting within the scope of employment," when that claim is presented within one year after it accrues.

(collecting cases).  The availability of those alternative remedy schemes here, whether or not they have been fruitful for Silva, precludes this court's finding a Bivens remedy available at this time.  Accordingly, the Bivens Fourth Amendment property-loss claims are dismissed.

### 3.   Denial of medical treatment

Finally, Silva alleges that, since his return to incarceration, he has been deliberately or negligently denied medical treatment for his chronic medical conditions, in violation of his Eighth Amendment rights.  See Nov. 18, 2019 Ltr. from Silva to U.S. Attorney General (Doc. No. 1-1, at 17) (submitted with complaint); Compl. (Doc. No. 1, at 3) (asserting violation of his Eighth Amendment rights).  To the extent such allegations can sustain a Bivens claim, Silva has not alleged that any of the named defendants directly or indirectly denied him medical treatment.  Moreover, his allegations do not support any reasonable inference that any named defendant exerts control over his medical care.  Accordingly, I dismiss Silva's Eighth Amendment claims against the defendants in this case for failure to state a claim upon which relief can be granted, without prejudice to his ability to file such claims against appropriate defendants in a new case.

**F.    Federal Tort Claims Act**

Liberally construed, Silva's allegations may also give rise to a claim under the Federal Torts Claim Act, 28 U.S.C. § 1346(b)(1).[6]  Silva has not named the United States as a defendant in this action.  This order granting the federal defendants' motion to dismiss is issued without prejudice to Silva's ability to move for joinder of the United States and to amend the complaint, within thirty days, to clarify his intent to plead an FTCA claim against the United States, arising from the alleged tortious conduct of federal agents at the time of his arrest resulting in his loss of property.

**IV.    CONCLUSION**

For the foregoing reasons, I grant the federal defendants' motion to dismiss (Doc. No. 16), and also dismiss, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, all claims asserted against Judge McBurney.  Silva is granted leave to file, within thirty days of this order, a motion to amend the complaint in this

---

[6] Under the FTCA, an individual may bring "claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

action to join the United States as a defendant and to add an
FTCA claim arising from the alleged tortious conduct of the
federal officers that allegedly caused his loss of $110.10 at
the time of his arrest.

      **SO ORDERED.**

                            /s/ Paul J. Barbadoro
                            Paul J. Barbadoro
                            United States District Judge

March 30, 2021

cc:  Gerald J. Silva, pro se
     Lauren Sandler Zurier, Esq.